Exhibit A - Note    Page 1 of 8

BK:   LOC:   Ln. No.   Ref. No.
RC:                    Date: 02/27/08   Acct. No.

# Note

**BORROWER(S):**
ZAKIA JOHNSON

89 BARTRAM AVENUE
LANSDOWNE, PA 19050

**1. BORROWER(S) PROMISE TO PAY.** In return for a loan that I have received, the undersigned Borrower(s) (hereinafter referred to as "I," "me," or "my") jointly and severally promise to pay to Wachovia Bank, National Association, a national banking association organized and existing under the laws of the United States of America ("Lender"), the sum of $32436.36 (this amount will be called "Principal"), plus daily simple interest ("Interest") beginning on the date that Principal is advanced. The Principal may include points, origination fees and other amounts permitted by applicable law. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note and who is entitled to receive payments under this Note will be called the "Note Holder."

**2. INTEREST.** Interest will accrue on the entire Principal balance outstanding at any time. Notwithstanding anything to the contrary, I do not agree to pay and the Note Holder does not intend to charge any Interest at a rate that is higher than the maximum rate of Interest that could be charged under applicable law for the extension of credit that is agreed to under this Note (either before or after maturity). If any notice of Interest accrual is sent and is in error, and if the Note Holder actually collects more Interest than allowed by law or this Note, the Note Holder agrees to refund any such excess Interest.

I agree to pay Interest on the unpaid Principal balance of this Note owing after maturity, and until paid in full at the same rate in effect before maturity. I agree that any loan origination fee paid to the Note Holder is earned as of the date of this Note.

Interest accrues on the Principal remaining unpaid from time to time, until paid in full. The Interest Rate, as defined in this Section 2 below, will be charged at a rate of 1/365th of the Interest Rate for each day, or 1/366th of the Interest Rate for each day in any leap year, applied against that day's outstanding Principal balance. The dollar amount of the finance charge and the payments disclosed to me for this credit transaction are based upon my payments being received by the Note Holder on the date payments are due. If my payments are received after the due date, even if received before the date a Late Charge as permitted by Section 4 applies, I may owe additional and substantial money at the end of the credit transaction and there may be little or no reduction of Principal. This is a result of the accrual of daily Interest.

To the extent that any fees or charges are added to the Principal balance, they will thereafter bear Interest and I agree to pay this Interest. I understand that in the event my first payment due date is more than one month from the date of this Note, one or more of my initial payments may not pay all of the interest owed on the date of the payment and therefore may not reduce the outstanding Principal balance.

If the governing law which applies to this Note sets maximum loan charges and is finally interpreted so that the Interest and other charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such Interest or other charge shall be reduced by the amount necessary to reduce the Interest or other charge to the permitted limit and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial payment.

Check One:

☐ **Fixed Rate:**
I agree to pay Interest on the outstanding Principal balance at a fixed annual rate of ____N/A__% ("Interest Rate").

☒ **Adjustable Rate:**
   **(A) Interest Rate:** I agree to pay Interest on the outstanding Principal balance at the initial annual rate of ____9.04__% ("Interest Rate") until the first Change Date as defined in Paragraph (B) below. Thereafter, the Interest Rate I pay may change as of each Change Date and will be calculated pursuant to Paragraph (D) below. My initial annual rate may not be related to the formula used to determine later rates.
   **(B) Date Definitions:**
      (i) **Change Date:** Each date on which the Interest Rate may change is called the Change Date. The Interest Rate may change ____02/27/15____ and every ____12____ month(s) thereafter.
      (ii) **Index Date:** The 25th day of each month is an "Index Date." If the Index is not published on the 25th day of the month, then the Index Date shall be the first day prior to the 25th day of the month on which the Index is published.
      (iii) **Look-back Date:** The date that is 30 days prior to a Change Date is called the "Look-back Date."
   **(C) The Index:** Check One:

      ☐ The "Index" is the "Prime Rate" as published on the Index Date in the "Money Rates" section of *The Wall Street Journal*, Eastern Edition. If there is more than one Prime Rate published on an Index Date, then the Note Holder will use the higher of such prime rates. If this Index ceases to exist, the Note Holder may substitute another Index (and Margin, as described in Paragraph (D) below) which movement approximates the movement of the Prime Rate.

**EXHIBIT A**

565957 (Rev 06)                                                               (10/07) Multi-State Real Estate Note

[X] The "Index" is the average of interbank offered rates for ___ month U.S. dollar-denominated deposits in the London market ("LIBOR") as published on the Index Date in the "Money Rates" section of *The Wall Street Journal*, Eastern Edition. If there is more than one LIBOR published on an Index Date, then the Note Holder will use the higher of such LIBOR rates. If this Index ceases to exist, the Note Holder may substitute another Index (and Margin, as described in Paragraph (D) below) which movement approximates the movement of LIBOR.

(D) **Calculation of New Interest Rate:** The new annual Interest Rate that will be applicable beginning on each Change Date will be determined as follows:

Check One:

[X] The new annual Interest Rate will be equal to the Index published on the Index Date for the calendar month immediately preceding the Look-back Date for that Change Date, rounded down to the nearest .01%, plus __5.30__ percentage point(s) ("Margin"). Subject to any applicable limitations set forth in Paragraph (E), this new Interest Rate will become effective on each Change Date.

[ ] The new annual Interest Rate will be equal to the Index published on the Index Date for the calendar month immediately preceding that Change Date, rounded down to the nearest .01%, plus _____ percentage point(s) ("Margin"). Subject to any applicable limitations set forth in Paragraph (E), this new Interest Rate will become effective on each Change Date.

(E) **Limits on Interest Rate Changes:** My Interest Rate will never be greater than __14.04__% or less than 0%.

[X] If this box is checked, the Interest Rate will be subject to the additional limitations on increases. The Interest Rate I am required to pay at the first Change Date will never be greater than __14.04__%. Thereafter increases will be subject to an additional limitation on each Change Date such that the Interest Rate I pay will never be increased on any single Change Date by more than 2% from the Interest Rate I have been paying for the preceding 12 months.

[ ] If this box is checked, there will be no additional limitation on increases in my Interest Rate.

(F) **Notice of Changes:** The Note Holder will deliver or mail to me a notice of any changes in my Interest Rate as required by applicable law. The notice will include information about any changes to my payment amount.

3. **PAYMENTS.**
(A) **Payment Options and Schedule:**

Check One:

[ ] **Interest Payments:** I will pay accrued Interest beginning on _____ as follows: check one: [ ] monthly or [ ] quarterly ("Interest Payments"). The amount of each Interest Payment will vary depending upon the amount of principal outstanding, the date principal payments or installment payments are received and if Section 2 of this Note provides for an Adjustable Rate, the Interest Rate then in effect. In addition, I will make the following Payments:

Check One:

[ ] **Principal Reduction Payments and/or a Balloon Payment:** In addition to the Interest Payments, I will make Principal Payments as set forth in the Payment Schedule below:

[ ] **Installment Payments:** For purposes of this Section 3, the "Payment Change Date" is the first payment due date that is at least 26 days after the "Anniversary Date." The Anniversary Date is the date that is ___ year(s) after the Note Date. Beginning on the Payment Change Date, in place of Interest Payments, I will make installment payments of Principal and Interest. On the Anniversary Date, the Note Holder will determine the [ ] monthly or [ ] quarterly payment amount that would be sufficient to repay the unpaid principal balance in full over the of a period of time ending on the Maturity Date as defined in Paragraph (D) with interest at the rate set in accordance with Section 2. The result of this calculation will be my new payment amount. The Note Holder will give me notice of this new payment amount. This payment amount is estimated in the Payment Schedule below. If Section 2 of this Note provides for an Adjustable Rate, this payment amount may change. On each subsequent Change Date, the Note Holder will determine the [ ] monthly or [ ] quarterly payment amount that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full over the remaining portion of a period of time ending on the Maturity Date as defined in Paragraph (D), below, at my new Interest Rate. The result of this calculation will be the new payment amount beginning on the first payment due date which is at least 26 days after the Change Date. I will pay my new payment amount until the payment amount changes again or until the Maturity Date as described in Paragraph (D).

[X] **Installment Payments or Installment Payments with a Balloon Payment:** I will pay the unpaid Principal and Interest in installment payments as set forth in the Payment Schedule below. If Section 2 of this Note provides for an Adjustable Rate, the payment amounts, including the final payment, as set forth in the Payment Schedule may change. On each Change Date, the Note Holder will determine the [X] monthly [ ] quarterly [ ] semi-annual or [ ] annual payment amount that would be sufficient to repay the unpaid Principal that I am expected to owe at the Change Date in full over the remaining portion of a period of time ending on the Maturity Date as defined in Paragraph (D), below, at my new Interest Rate. The result of this calculation will be the new payment amount. I will pay my new payment amount beginning on the first payment due date after the Change Date until the payment amount changes again or until the Maturity Date as described in Paragraph (D).

**Payment Schedule:**

| Number of Payments | Payment Amount | Frequency | Start/Due Date | Number of Payments | Payment Amount | Frequency | Start/Due Date |
|---|---|---|---|---|---|---|---|
| 84 | $292.91 | M | 04/05/08 | | $ | | |
| 156 | $279.50 | M | 04/05/15 | | $ | | |

Frequency Legend: M = Monthly  Q = Quarterly  S = Semi Annually  A = Annually

(B) **Place of Payments:** I will make my payments in U.S. funds payable to the Note Holder at the address provided to me by the Note Holder or at a different address if required by the Note Holder.

(C) **Application of Payments:** Unless otherwise prohibited by the law governing this Note, each payment I make on this Note will first reduce the amount of accrued unpaid Interest, then any optional insurance premiums due, then any applicable unpaid charges and then unpaid Principal. I will make payments until I have paid all of the Principal and Interest and any other fees or charges that I may owe under the terms of this Note.

(D) **Maturity Date:** If on ___03/05/28___, I still owe any amount under this Note, I will pay those amounts in full on that date which is called the "Maturity Date."

(E) **Optional Credit Insurance:** If I have selected optional credit insurance offered by the Note Holder in connection with this loan, the payment amount(s) shown in the Payment Schedule include the premiums for the insurance coverage(s) that I have selected. I understand that the actual total premium amount I pay will depend upon my payment record.

I understand that credit life and credit disability (accident and health) insurance are not required, and that I may cancel them at any time by giving written notice to you. If my credit insurance is canceled, no further portion of any payments I make will be applied to credit insurance premiums. At my request, you will adjust my payment amount to reflect the cancellation of the credit insurance. If my credit insurance is cancelled and Section 2 of this Note provides for an Adjustable Rate, on the next Change Date the cancellation of the credit insurance will be considered in determining my new payment amount.

(F) **Balloon Payment:** If the Payment Schedule requires me to make an estimated final payment that is significantly larger than any other payment ("Balloon Payment"), I understand that I will be required to make this Balloon Payment on the Maturity Date. I understand that the Note Holder is not required to refinance any Balloon Payment and that the failure to make the required Balloon Payment on the Due Date constitutes a Default under the terms of this Note.

4. **FEES AND CHARGES.** In addition to Interest and other amounts I may agree to pay, I agree to pay the Note Holder the following additional fees and charges:

(A) **Late Charges:** If a payment is not received in full within 15 days of the date it is due, I will pay a late charge equal to 4% of the unpaid portion of the scheduled payment amount.

(B) **Returned Payment Fee:** Unless otherwise limited or prohibited by the law governing this Note, I will pay a charge of up to $25.00 for each payment (check or automatic payment) that I make that is returned or dishonored for any reason.

(C) **Origination Fee:** If an origination fee or other fee or charge is charged as included on the HUD-1, HUD-1A, or Itemization of Amount Financed prepared in connection with this loan transaction, I agree to pay such fees and charges. Except as otherwise required by law, I agree that such fees and charges are fully earned as of the date of this Note and are nonrefundable upon prepayment.

(D) **Additional Charges:** I agree that if, during the term of this Note, I request other services related to servicing or administering my loan for which the Note Holder has a scheduled charge, I will, to the extent permitted by the law governing this Note, pay the Note Holder the then current fee for such services or request if the Note Holder agrees to perform such service or request. I understand that any such fees are fully earned when charged and are nonrefundable upon prepayment.

5. **BORROWER'S FAILURE TO PAY AS REQUIRED AND TERMS OF DEFAULT.**

(A) **Terms of Default:** I will be in Default under this Note if any of the following things happen:

(i) If I fail to make any payment or comply with any of the terms of this Note or any other note with the Note Holder now or in the future; or

(ii) If I make any false, incorrect or misleading representation or warranty at any time during the application process; or

(iii) If I die; or

(iv) If I become involved in any bankruptcy or insolvency proceeding; or

(v) If the collateral described in Section 6 or any schedule to this Note is used in violation of any law or regulation or if a judgment or lien is filed or levied against me or the collateral or the collateral is impaired, damaged, or removed from the custody of the Note Holder; or

(vi) If I fail to abide by the term(s) of any Security Instrument or other documents described in Section 6 which secure payment of this Note.

(B) **Notice of Default:** If I am in Default, then the entire Principal balance, accrued Interest, fees, and collection costs permitted to be collected under applicable law will be immediately due and payable. At its option or if required by law, the Note Holder may send me a written notice informing me of said Default and acceleration. If I make any payment after the Note Holder has demanded payment of the entire balance due, my payment will be applied to the unpaid balance due under this Note. The unpaid balance consists of the Principal Amount remaining due, plus accrued finance charges, unpaid Late Charges, collection costs, and all other amounts due to the Note Holder under this Note. The Note Holder shall also have other rights and remedies provided by law. If the net proceeds of collateral sold do not pay my indebtedness in full, I will pay the Note Holder the difference, plus Interest at the Note Interest Rate until the unpaid balance is paid in full. Any Default of this Note will also constitute an event of Default of any separate Mortgage, Deed of Trust or Security Deed securing this Note ("Security Instrument") or Pledge Agreement securing this Note. Upon Default, the Note Holder may proceed to enforce the terms of this Note or enforce any rights that it may have under the Security Instrument or Pledge Agreement.

(C) **No Waiver by Note Holder:** Even if, at a time when I am in Default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in Default at a later time. Any failure to enforce any provision of this Note by the Note Holder shall not constitute any waiver of such rights of the Note Holder to subsequently enforce such rights or remedies.

(D) **Payment of the Note Holder's Costs and Expenses:** If the Note Holder has required me to pay immediately in full as described above, and I fail to do so and such failure causes the Note Holder to incur additional expenses, the Note Holder will have the right to a refund of all of its costs and expenses to the extent not prohibited by the law governing this Note. To the extent that Colorado law governs this Note, these expenses include such amounts permitted by applicable law, including, but are not limited to, reasonable attorney's fees not in excess of 15% of the unpaid debt after default and referral to an attorney who is not a salaried employee or such additional fees as may be awarded by the court. To the extent that any law other than the law of Colorado governs this Note, those expenses include reasonable attorneys' fees for an attorney who is not the Note Holder's salaried employee, foreclosure fees and court costs but, in no event, shall these expenses exceed fifteen percent (15%) of the unpaid balance plus court costs.

6. **THIS NOTE IS SECURED BY A SECURITY INSTRUMENT.** In addition to the protections given to the Note Holder under this Note, a separate Security Instrument(s), on real property (the "Property") described in the Security Instrument and dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. The Security Instrument describes how and under what conditions I may also be required to make immediate payment in full of all amounts I owe under this Note. I agree to these conditions. Subject to applicable law, I understand that this loan is subject to repayment in full in the event the Property securing this debt is sold, conveyed or otherwise transferred.

If in addition to a Security Instrument, I pledge securities, cash accounts or other liquid collateral (the "Other Collateral") as Other Collateral for this Note, then I grant to the Note Holder a perfected security interest in such Other Collateral and all additions or replacements to, or proceeds of as is more fully described in the separate Collateral Pledge Agreement (the "Pledge Agreement") executed as of the same date as this Note. The Pledge Agreement describes the Other Collateral in detail and protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. The Pledge Agreement also describes how and under what conditions I may also be required to make immediate payment in full of all amounts that I owe under this Note. I agree to these conditions. If the Other Collateral includes securities, I agree to deliver immediately to the Note Holder, fully endorsed, any certificates for shares representing any stock dividend, stock split or right to subscribe. I further pledge and agree to deliver to the Note Holder, upon demand, additional Other Collateral satisfactory to the Note Holder and in accordance with all margin requirements. If I do not provide the Note Holder with a perfected security interest in the Other Collateral and the Note Holder incurs any expenses, including attorneys' fees, in order to obtain a perfected security interest, I will be responsible for such expenses.

If I do not provide or assist the Note Holder in obtaining a perfected security interest in the Property or Other Collateral and the Note Holder incurs any expenses, including attorney's fees, in order to obtain a perfected security interest in such Property or Other Collateral, to the extent not otherwise prohibited by the law governing this Note, I agree that the Note Holder may add the amount of such expenses to the Principal and that such expenses will accrue Interest at the Note Interest Rate until paid in full.

7. **PREPAYMENT.**
(A) Subject to the order of application of payments described in Section 3, I have the right to make payments of Principal at any time before they are due without penalty. A prepayment of all unpaid Principal is known as a "full prepayment." A prepayment of only part of the unpaid Principal is known as a "partial prepayment."
(B) If I make a partial prepayment, my next due date may be advanced. If I make a payment that is more than the amount that is due, the amount in excess of the amount due is called an "Excess Payment." If I make an Excess Payment, the Note Holder will assume that I want to reduce or skip my next scheduled payment or payments. If the Excess Payment is less than or equal to the next scheduled payment, the next scheduled payment will be reduced by the amount of the Excess Payment. If the Excess Payment exceeds the amount of my next scheduled payment, the number of payments that may be skipped will be determined by subtracting each subsequently scheduled payment from the Excess Payment. So long as the remaining portion of the Excess Payment exceeds the next scheduled payment amount, that payment may be skipped. When the remaining portion of the Excess Payment is equal to or less than my next scheduled payment, that remaining portion will be used to reduce the amount of the next scheduled payment. If I want the Note Holder to handle an Excess Payment differently, I will tell the Note Holder in writing. I understand that Interest will continue to accrue on the outstanding principal balance and that if I want maximum Interest savings from Excess Payments, I should continue to make payments on or before the scheduled due date.

8. **BORROWER'S WAIVERS.** I waive my rights to require the Note Holder to do certain things. Those things are: (a) to demand payment of amounts due (known as "presentment"); (b) to give notice that amounts due have not been paid (known as "notice of dishonor"); and (c) to obtain an official certification of non-payment (known as "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else, also waives these rights. These persons are known as "Guarantors," "Sureties," "Co-Signers" and "Endorsers."

9. **GIVING OF NOTICES.**
(A) Any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail addressed to me at the address contained in this Note. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.
(B) Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address provided to me by the Note Holder. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

10. **PAYMENT IN FULL. I AGREE THAT THE NOTE HOLDER MAY ACCEPT PAYMENTS MARKED "PAID IN FULL" WITHOUT ANY LOSS OF THE NOTE HOLDER'S RIGHTS UNDER THIS NOTE UNLESS I SEND THEM FOR SPECIAL HANDLING TO WACHOVIA BANK, NATIONAL ASSOCIATION, SPECIAL PAYOFFS, PO BOX 10723, ROANOKE, VA 24022. ACCEPTANCE OF ANY PAYMENT SENT TO THE SPECIAL HANDLING ADDRESS DOES NOT WAIVE THE NOTE HOLDER'S RIGHT TO SUBSEQUENTLY REJECT SUCH PAYMENT IN ACCORDANCE WITH APPLICABLE LAW.**

11. **EXTENSIONS AND MODIFICATIONS.** All Guarantors, Sureties, Co-Signers, Endorsers and I consent to any and all extensions of time, renewals, waivers or modifications which may be granted or consented to by the Note Holder as to the time of payment or any other provision of this Note. If in its sole discretion, the Note Holder permits an extension,

renewal or modification to this Note. I agree to pay a charge not to exceed an amount permitted by the law governing this Note. All Guarantors, Sureties, Co-Signers, Endorsers and Makers hereby waive presentment, notice of dishonor, and protest hereof. This Note is the joint and several obligation of each Maker and shall be binding upon them and their heirs, successors and assigns.

**12. INSURANCE REQUIREMENTS.** I agree to purchase property/hazard insurance insuring the Property against loss and as required by the Security Instrument. I acknowledge that I may obtain property/hazard insurance from any insurance company of my choice, subject to the Note Holder's right of approval which shall not be unreasonably withheld. Unless I provide the Note Holder with evidence of the insurance coverage required by my agreement with the Note Holder, the Note Holder may purchase insurance at my expense to protect the Note Holder's interests in the Property. This insurance may, but need not, protect my interests. The coverage that the Note Holder purchases may not pay any claim that I make or any claim that is made against me in connection with the Property. I may later cancel any insurance purchased by the Note Holder, but only after providing the Note Holder with evidence that I have obtained insurance as required by our agreement. If the Note Holder purchases insurance for the Property, I will be responsible for the costs of the insurance, including interest and any other charges the Note Holder may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance will be added to the Principal and will accrue Interest at the Note Interest Rate. I understand that the costs of the insurance obtained by the Note Holder may be more than the cost of insurance I may be able to obtain on my own.

**13. RESPONSIBILITY OF PERSONS UNDER THIS NOTE.** If more than one person signs this Note, each of us is jointly and severally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any Guarantor, Surety, Co-Signer or Endorser of this Note (as described in Section 8 above) jointly and severally guarantee the payment, when due, to any Note Holder hereof of all amounts from time to time owing on this Note. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. I and any Guarantor, Surety, Co-Signer or Endorser of this Note further agrees that the failure by the Note Holder to perfect any security interest granted by this Note shall not affect my liability or the liability of any Guarantor hereon.

**14. GOVERNING LAW.** This Note will be governed by and interpreted in accordance with federal law and, except as preempted by federal law, the laws of the state where the property securing this Note is located. Federal law that governs this Note includes 12 USC 85, which incorporates in part the laws of the State of North Carolina. If the Property securing this debt is located in Maryland, to the extent this Note is governed by Maryland law, this Note is governed by *Md. Code Ann., Commercial Law §12-1001 et. seq.* and applicable federal law.

**15. GENERAL PROVISIONS.** I agree that I may not sell, assign or otherwise transfer my rights or obligations under this Note and that such action will be void. Any person who takes over my rights or obligations under this Note by operation of law will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of any Guarantor, Surety, Co-Signer or Endorser of this Note is also obligated to keep all of the promises made in this Note. This Note is intended by the Note Holder and me as a complete and exclusive statement of its terms, there being no conditions to the enforceability of this Note. This Note may not be supplemented or modified except in writing signed by the Note Holder and me. This Note benefits the Note Holder, its successors and assigns, and binds me and my heirs, personal representatives and assigns. If any provision of this Note shall for any reason be held to be invalid or unenforceable, such determination shall not affect the enforceability of the remaining provisions of this Note. Headings are for convenience of reference only and shall not affect the construction of this Note or any other document associated with this loan.

**16. SAVINGS AND COMPLIANCE.** It is the intention of you and me to comply with applicable law. In each and every instance, our rights shall be limited by applicable law (to the extent such laws may not be effectively waived), construed so as to comply with such laws, and our rights may not be exercised except to the extent permitted by applicable law. No part of this agreement, nor any charge or receipt by you, is supposed to permit you to impose interest or other amounts in excess of lawful amounts. If an excess occurs, you will apply it as a credit or otherwise refund it and the rate or amount involved will automatically be reduced to the maximum lawful rate or amount. To the extent permitted by law, for purposes of determining your compliance with law, you may calculate charges by amortizing, prorating, allocating and spreading any such charges.

**17. DOCUMENTARY TAX.** For loans secured by real property located in Florida, the state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

**NOTICE TO BORROWER:**

1. **CAUTION: IT IS IMPORTANT THAT THE BORROWER THOROUGHLY READS THIS NOTE BEFORE THE BORROWER SIGNS IT.**
2. **THIS NOTE IS SECURED BY EITHER A FIRST OR SUBORDINATE LIEN ON REAL PROPERTY.**
3. **THE BORROWER IS ENTITLED TO A COPY OF THIS NOTE.**
4. **DO NOT SIGN THIS NOTE IF IT CONTAINS ANY BLANK SPACES.**
5. **THE BORROWER ACKNOWLEDGES RECEIPT OF A COMPLETED COPY OF THIS NOTE.**

By signing and sealing this Note, I agree under seal to the terms set forth above.

_____[SEAL]
Borrower ZAKIA JOHNSON

_____[SEAL]
Borrower

Any Guarantor, Surety, Co-Signer or Endorser of this Note acknowledges receipt and execution of the Co-Signer's Notice.

_____[SEAL]
Guarantor - Co-Signer

_____[SEAL]
Guarantor - Co-Signer

---

**FOR OFFICE USE ONLY**

Endorsement.
Pay to the Order of _____

Without Recourse
_____

By: _____
Name: _____
Title: _____

---

565957 (Rev 06)                     6 of 6                (10/07) Multi-State Real Estate Note

# TRUTH IN LENDING DISCLOSURE STATEMENT

Date of Disclosure Statement: 02/27/08   Visit No.: _____

Borrower(s): ZAKIA JOHNSON

Creditor: Wachovia Bank, National Association 65 W BALTIMORE AVENUE
LANSDOWNE PA 190500000

The words "I," "me," and "my," refer to Borrower(s) and "you" and "your" refer to Wachovia Bank, National Association.

| ANNUAL PERCENTAGE RATE: The cost of my credit as a yearly rate. | FINANCE CHARGE: The dollar amount the credit will cost me. | Amount Financed: The amount of credit provided to me or on my behalf. | Total of Payments: The amount I will have paid after I have made all payments as scheduled. |
|---|---|---|---|
| 8.91% | $36104.25 | $32102.19 | $68206.44 |

My payment schedule will be:

| No. of Payments | Payment Amount* | Frequency | Start/Due Date | No. of Payments | Payment Amount* | Frequency | Start/Due Date |
|---|---|---|---|---|---|---|---|
| 84 | $292.91 | M | 04/05/08 | | $ | | |
| 156 | $279.50 | M | 04/05/15 | | $ | | |

* If my Payment Amount shows a range, my payment will vary between these two amounts.
Frequency Legend: M = Monthly   Q = Quarterly   S = Semi Annually   A = Annually

[X] **Variable Rate:**

Check One:

[X] My loan contains a variable rate feature. Disclosures about the variable rate feature have been provided to me earlier.

[ ] The annual percentage rate may increase during the term of this transaction if the Index increases. The index is:

Check One:
[ ] the "Prime Rate"
[ ] the average of interbank offered rates for _____ month U.S. dollar-denominated deposits in the London market ("LIBOR").

The index is published in the "Money Rates" section of *The Wall Street Journal*, Eastern Edition. Any increase in my rate will increase the amount of my scheduled payments. The rate may not increase more than once every _____ month(s). My rate will not increase above _____%.

[ ] If checked, my rate will not increase more than 2 percentage points annually.

Check One:

[ ] If my loan were for $10,000 at an initial interest rate of 8.00% and the interest rate increased to 10.00% in one month, my interest payment amounts would increase from $67.94 to $84.94 if my interest payments were due monthly, and from $203.82 to $252.05 if my interest payments were due quarterly.

[ ] If my loan were for $10,000 with 60 monthly payments at an initial interest rate of 8.00% and the interest rate increased to 10.00% in one year, my payment amount would increase from $202.82 to $210.72 if my payments were due monthly; from $611.72 to $636.23 if my payments were due quarterly; from $1,233.24 to $1,284.70 if my payments were due semiannually; and from $2,505.11 to $2,617.56 if my payments were due annually.

**Security:** I am giving a security interest in:

___ The goods or property being purchased.

X Other (describe) REAL ESTATE

Collateral securing other loans with you, except my principal dwelling or household goods, may also secure this loan.

**Insurance:** If this loan is secured, I may obtain property insurance from any insurer I choose.

**Filing Fees and Taxes:** $ 0.00

**Late Charges:** If a payment is not received in full within 15 days of the date it is due, I will pay a late charge equal to 4% of the unpaid portion of the scheduled payment amount.

**Prepayment:** If I pay off early, I will not have to pay a penalty.

**Assumption:** Someone buying the property securing my loan cannot assume the remainder of my loan on the original terms.

I may see my contract documents for any additional information about non-payment, default, any required payment in full before the scheduled due date, and prepayment refunds and penalties.

By signing below, I acknowledge receipt of a copy of this Disclosure on the date indicated above.

_____   _____
Borrower ZAKIA JOHNSON                Borrower

_____   _____
Borrower                              Borrower

## CREDIT INSURANCE DISCLOSURES

I understand that credit life and credit disability (accident and health) insurance are not required to obtain credit, and that you will not provide them unless I sign below and agree to pay the additional cost. If I want any of these insurance coverages, I must be sure that the insurance coverage I want is indicated, that the premium amount is filled in, and that I have signed below. The term and amount of any insurance I request is as follows:

| INSURED | | TYPE | PREMIUM | TERM IN MOS. | AMT. OF COVERAGE | DISABILITY MONTHLY BENEFIT |
|---|---|---|---|---|---|---|
| #1 | #2 | | | | | |
| ___ | ___ | Credit Life | $_____ | _____ | $_____ | |
| ___ | ___ | Credit Disability | $_____ | _____ | $_____ | $_____ |

The payment amount disclosed in the Truth in Lending Disclosure Statement reflects the premiums for the insurance coverage(s) that I have selected.

**Signature.** My signature below means I request the coverage(s) checked and quoted above.

_____   _____
Signature of Insured #1               Signature of Insured #2

587417 (Rev 02)   (01/07) WBNA Multi-State Truth-in-Lending Disclosure

# ADDENDUM TO NOTE
## Authorization to Draft Feature

This Addendum to Note ("Addendum") is made as of __02/27/08__ and is incorporated into and shall be deemed to amend and supplement that Note ("Note") that evidences the indebtedness of the undersigned ("Borrowers") to Wachovia Bank, National Association ("Lender").

Capitalized terms not defined in this Addendum shall have the meaning given to them in the Note.

- A. Borrowers have executed a separate Authorization to Draft in connection with the Note and this Addendum to Note.
- B. Borrowers have agreed to establish and maintain a deposit account at Wachovia Bank, N.A. or Wachovia Bank of Delaware ("Account") and to authorize Lender or the Note Holder to have payments automatically deducted from the Account to pay the regularly scheduled payment in connection with the Note.
- C. In consideration of this authorization to draft, the Lender has provided for a reduced Interest Rate to be specified in the Note.
- D. If the Note provides for a fixed Interest Rate that Interest Rate has been reduced by _____%. If the Note provides for an adjustable interest rate the initial Interest Rate and Margin as specified in Section 2 of the Note have each been reduced by __0.10__%.
- E. Lender is willing to offer this reduced interest rate only so long as Borrower's maintains the authorization to draft.

NOW THEREFORE, in consideration of the promises, covenants and conditions stated herein and for other good and valuable consideration, receipt of which is acknowledged, Borrowers agree as follows:

1. **Interest Rate Changes.** Upon the occurrence of a Termination Event as described in Section 2 of this Addendum, the following shall apply:

   ☐ Fixed Rate:
   The Interest Rate as set forth in Section 2 of the Note shall be increased by _____%.

   ☒ Adjustable Rate:
   The initial annual interest rate as set forth in Section 2 of the Note shall be increased by __0.10__%. The Margin as set forth in Section 2 of the Note shall be increased by __0.10__%.

2. **Termination Event.** Each of the following shall constitute a "Termination Event":

   - a. Borrowers close the Account without establishing a new account eligible for automatic draft at Wachovia Bank, N.A or Wachovia Bank of Delaware and executing a new Authorization to Draft in connection with that account.
   - b. Wachovia Bank, N.A. or Wachovia Bank of Delaware terminates the Authorization to Draft pursuant to the terms of that agreement.

3. **Rate Changes.** Following a Termination Event, the Interest Rate will increase on the first payment due date which is at least 30 days after the Termination Event or such later date as the Note Holder may choose ("Termination Date"). The payment specified in the Note will change on the first payment due date which follows the Termination Date.

4. **Amendment.** Except as specifically altered by this Addendum, all terms, conditions and provisions of the Note shall remain in full force and effect.

IN WITNESS WHEREOF, the Borrowers have caused this Addendum to be executed as of the date first set forth above.

_____  
Borrower  
ZAKIA JOHNSON

_____  
Borrower

576849 (Rev 00)                                    (01/07) Addendum to Note – Authorization to Draft Feature